# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SHARON SUGGS,
GUARDIAN of MICHELLE POSNER,

      Plaintiff/Counter-Defendant/
      Third-Party Defendant,

v.

GENERAL AMERICAN LIFE INSURANCE
COMPANY and INTEGRITY LIFE
INSURANCE COMPANY,

      Defendants/             CIVIL CASE NO. 05-60023
      Counter-Plaintiffs,       HON. MARIANNE O. BATTANI
      Third-Party Plaintiffs,

v.

SHARON SUGGS,
GUARDIAN OF MICHELLE POSNER,

      Plaintiff/Counter-Defendant/
      Third-Party Defendant,

and,

J.G. WENTWORTH, S.S.C. LIMITED
PARTNERSHIP,

      Third-Party Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO ALLOW AMENDED AND SUPPLEMENTAL ANSWERS TO J.G. WENTWORTH'S COUNTER-COMPLAINT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING AMERICAN LIFE INSURANCE COMPANY AND INTEGRITY LIFE INSURANCE COMPANY'S MOTION FOR DECLARATORY JUDGMENT, AND GRANTING J.G. WENTWORTH'S MOTION FOR SUMMARY JUDGMENT

I.      **INTRODUCTION**

Before the Court is plaintiff Sharon Suggs' Motion to Allow Amended and Supplemental Answers to Third-Party Defendant J.G. Wentworth's Counter-Complaint (Doc. #30), Plaintiff's Motion for Summary Judgment on Third-Party Defendant's Counter-Complaint (Doc. #31), defendants General American Life Insurance Company and Integrity Life Insurance Company's Motion for Declaratory Judgment (Doc. # 33), and J.G. Wentworth's Motion for Summary Judgment (Doc. #34). Plaintiff originally filed suit in Oakland County Circuit Court against General American Life Insurance Company ("General") and Integrity Life Insurance Company ("Integrity") for breach of an annuity contract. General and Integrity removed the case to federal court and filed a third-party complaint against J.G. Wentworth ("Wentworth"). General and Integrity ask the court to decide who is the proper payee for the annuity contract. Both Suggs, as conservator of Michelle Posner, and Wentworth have filed motions for summary judgment on that issue.

Posner sought treatment at Providence Hospital in Southfield, Michigan, for undisclosed reasons. As a result of that treatment, Posner lapsed into a coma and suffered physical and mental injuries. On November 17, 1989, Michelle Posner entered into a Release and Settlement Agreement with Providence ("Settlement Agreement"). In the Settlement Agreement, Posner agreed to dismiss her personal injury claims against the hospital and its employees in exchange for monetary compensation. The Settlement Agreement obligated Providence to pay Posner certain periodic lump sum and monthly payments. Providence funded its obligation by purchasing an annuity contract from Integrity. In order to reap certain tax benefits, General owns the annuity and remits the monthly and periodic lump sum payments to Posner. Posner, as

the annuitant, is not the contract owner and has no ownership rights. Under the terms of the annuity, she cannot accelerate, sell, mortgage, or assign the payments. Posner was informed of these provisions by Integrity in a July 23, 1996, letter.

On January 14, 1997, Posner entered into a purchase agreement with Wentworth. In the purchase agreement, Posner sold to Wentworth the right to certain annuity payments. The purchase agreement contained language where Posner acknowledged that the annuity contract and the Settlement Agreement contained language restricting the assignability of the annuity, released Wentworth from any claim that the purchased assets were not assignable, and agreed not to sue Wentworth over the anti-alienation clause in the annuity. From June 9, 1997, through November 11, 1999, Posner entered into ten amendments to the purchase agreement.[1] In the amendments, Posner agreed to sell the rights to additional annuity payments. Each time Posner entered a contract to sell her rights to the annuity payments, she met with Lawrence S. Cohen, Esq. Cohen allegedly explained the nature and terms of the transaction and found her to be able to comprehend both, as evidenced in several letters from Cohen to Wentworth. Plaintiff alleges that Cohen was not acting in her best interest, and instead was motivated by compensation received from Wentworth every time a client enters into a purchase agreement.

Wentworth received the bargained for payments for seven years. However, on May 28, 2003, Posner informed Wentworth that she had taken steps to divert payments from Wentworth to herself in order to pay her mortgage company. On June 12, 2003, Wentworth received a confessed judgment against Posner in Pennsylvania Common Pleas Court, utilizing the

---

[1] The original purchase agreement and the amendments will be referred to as the "purchase agreements."

confession of judgment provision contained in the purchase agreements. On June 20, 2003, Wentworth obtained a Writ of Execution issued in a Pennsylvania Common Pleas Court against any and all properties held by Integrity on Posner's behalf. Wentworth has taken no further action to collect the annuity proceeds, which have been withheld by Integrity since July 2003.

On September 22, 2004, Sharon Suggs was appointed Posner's conservator by the Oakland County probate court. The authority to act as conservator expired on November 17, 2005. On December 20, 2004, Suggs, on behalf of Posner, filed suit against General and Integrity in Oakland Count Circuit Court for breach of contract, asking for a court order directing Integrity to send the annuity payments to her. Integrity and General removed the case to U.S. District Court for the Eastern District of Michigan on January 26, 2005. General and Integrity subsequently filed a counter-complaint against Suggs and a third-party complaint against Wentworth, and asked this Court to determine the relative rights of Posner and Wentworth *vis-a-vis* the withheld and future annuity payments. In turn, Wentworth filed a complaint against Posner, alleging that Posner sold her rights to the annuity payments.

On April 21, 2005, Posner filed for protection from creditors under Chapter 7 of the Bankruptcy Code. On October 5, 2005, the bankruptcy court entered an order granting Wentworth relief from the automatic stay, with the condition that Wentworth cannot ask this Court to enforce the judgment rendered by the Pennsylvania court.

As mentioned above, General and Integrity ask this Court to determine who is the proper payee of the withheld and future annuity payments. Plaintiff's summary judgment motion asks the Court to order payment to Posner. Suggs contends that: Posner lacked capacity to contract when she entered into the purchase agreements with Wentworth; Posner had no right to sell the

annuity payments because she did not own the annuity; the Settlement Agreement contained an anti-alienation clause that prohibited the sale of the payments; and, Wentworth is barred from asking this Court for specific performance of the purchase agreement because it has already received a writ of execution in Pennsylvania.  Wentworth seeks summary judgment on its counter-complaint against Suggs, contending that the anti-alienation clause in the Settlement Agreement is an illegal restraint on trade, that Posner waived her right to sue Wentworth over the anti-alienation clause when she signed the purchase agreements, and that Suggs has presented no evidence of Posner's alleged incapacity to contract.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  The Supreme Court, commenting on the mandate in Rule 15(a), stated:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.--the leave sought should, as the rules require, be "freely given."  Foman v. Davis, 371 U.S. 178, 182 (1962).

Leary v. Daeschner, 349 F.3d 888, 905 (6th Cir.2003).  However, "[i]t is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss."  Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., 632 F.2d 21, 23 (6th Cir. 1980).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

5

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate

principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

### III.   ANALYSIS

####   A.   General American Life Insurance and Integrity Life Insurance Company's Motion For Declaratory Judgment

Under 28 U.S.C. § 2201(a), declaratory relief is available, "[i]n a case of actual controversy within its jurisdiction, . . . ." Under that section,

> . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Sixth Circuit has articulated a five-factor test to determine if declaratory relief under § 2201 is warranted:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Grand Trunk W. R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding . . . ." Id.

Because the Court finds that all five requirements are met, the motion for declaratory judgment is GRANTED. First, the judgment will serve a useful purpose in clarifying and settling the legal relations in issue. The controversy centers on who has greater rights to the annuity payments. All parties with an interest in the payments are properly before the Court. Therefore, the Court's opinion that states the law will clarify and settle the legal issues for all interested parties. Next, the judgment will terminate the uncertainty and controversy giving rise to the proceeding. Third, the declaratory remedy was not sought for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*." Grand Trunk, 746 F.2d at 326. General and Integrity sought the remedy once all interested parties were properly before the

8

Court in order to avoid double liability; not to end, or create precedent for, litigation in other fora.

Determination of the fourth factor is informed by the addition of three other considerations: 1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and, 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000). There is only one underlying factual issue - Posner's capacity to contract. As discussed below, there is insufficient evidence of her incapacity to survive a motion for summary judgment. Even if there were, a state trial court would not be in a better position to evaluate the issue, and there is not a close nexus between the underlying factual and legal issues and state public policy. Thus, this is not a situation where it is inappropriate "to preempt the right of the state court to rule on a previously undetermined question of state law," or otherwise improperly encroach upon state jurisdiction. Omaha Property & Casualty Ins. Co. v. Johnson, 923 F.2d 446, 448 (6th Cir. 1991).

Finally, because only legal issues, except Posner's competency, exist, there is no alternative remedy which is better or more effective. Moreover, a trial to determine Posner's competency is unnecessary because she has presented no evidence, other than her own affidavit, that is probative of her competency at the time she entered the contracts. Thus, Posner is unable to survive a motion for summary judgment on the issue of competency.

**B.     Suggs' and J.G. Wentworth's Cross-Motions for Summary Judgment**

### 1. Posner Cannot Sustain Her Burden of Proving Incapacity

Posner[2] raises a number of arguments as to why the Court should find, as a matter of law, that she has greater legal rights in the proceeds of the annuity contract. The first argument is that she lacked capacity to contract at the time she signed the purchase agreements. "Persons entering into business contracts and settlement agreements, . . . must, generally, possess 'sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged.'" Persinger v. Holst, 639 N.W.2d 594, 597 (Mich. Ct. App. 2001)(quoting In re Estate of Erickson, 508 N.W.2d 181, 183 (Mich. Ct. App. 1993)). However, she has presented no evidence, other than her own affidavit, that is probative of her competency at the time she entered the contracts. Thus, she is unable to survive a motion for summary judgment on the issue of competency. The evidence required to survive a motion for summary judgment must be more than the nonmovant's own pleadings and affidavits. Smith, 250 F.3d at 1036. The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252. Posner has not submitted sufficient evidence that would support a jury verdict in her favor on the issue of whether she could not understand in a reasonable manner, at the time she entered the contracts, the nature and effect of the contracts she signed. See Persinger v. Holst, 639 N.W.2d 594, 597 (Mich. Ct. App. 2001), In re Estate of Erickson, 508 N.W.2d 181, 183 (Mich. Ct. App. 1993), Howard v. Howard, 352 N.W.2d 280, 282 (Mich. Ct. App. 1984).

---

[2] Because Sharon Suggs is no longer Michelle Posner's conservator, the Court will refer to Posner as the moving party.

Therefore, Posner cannot void the purchase agreements on the basis of incapacity to contract.

### 2. The Anti-Assignment Clause in the Settlement Agreement is Unenforceable Against Wentworth

Posner next argues that the anti-alienation clause in the annuity contract should be interpreted in accordance with Michigan law, and that the clause is enforceable in circumstances similar to the circumstances she now confronts. In Wonsey v. Life Ins. Co. of N. Am., 32 F.Supp. 2d 939, 942 (E.D. Mich. 1998)(Gadola, J.), the court held that because there was no previous Michigan case law on the subject, the modern trend regarding enforceability of anti-alienation clauses would be followed.[3] "The modern trend with respect to contractual prohibitions on assignments is to interpret them narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee." Id., at 943. The modern trend is expressed, as noted in Wonsey, in the Second Restatement of Contracts. The relevant provisions, in this case, state:

> (2) A contractual right can be assigned unless
> (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or
> (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or
> (c) assignment is validly precluded by contract.

RESTATEMENT (SECOND) CONTRACTS § 317.

---

[3] The fact that Michigan now expressly allows assignment of the right to receive structured settlement payments even when confronted with an a contractual assignment restriction, albeit with court approval of the terms, suggests that the modern trend has since been adopted by the Michigan legislature. See MICH. COMP. LAWS ANN. §§ 691.1193. Because the Settlement Agreement and the purchase agreements were entered into before the effective date of the Michigan Structured Settlement Protection Act, its provisions do not apply to the case at bar.

> (1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.
> (2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,
> (a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation;
> (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective;
> (c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition.

Id., at § 322.  Here, the Settlement Agreement's language prohibited the alienation of the right to receive the annuity payments, but did not eliminate the parties' right to assign.  Because it merely prohibited assignment and not the power to assign, the assignment to Wentworth of the right to receive the annuity payments was a breach of the Settlement Agreement, but did not rendered the assignment ineffective.

Additionally, the rationale for construing anti-assignment provisions narrowly also leads to the conclusion that, in this case, the anti-alienation provision is ineffective.  The rationale behind the modern trend is the "implicit recognition that the obligor, . . . would not suffer any harm by a mere assignment of payments under a contract."  Wonsey, 32 F. Supp. 2d at 943.  Here, neither General nor Integrity have contested the assignment in any way, and there is no evidence that Integrity, as the obligor, would suffer any harm by the assignment of the right to receive the payments, or that its duties and obligations have changed in any way.

Even if the anti-assignment clause in the Settlement Agreement would be enforceable under Wonsey, Posner gave up the right to assert the enforceability of that clause in a

12

contemporaneous claim to the annuity payments by Wentworth. A waiver involves "the voluntary relinquishment of a known right evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Country Chevrolet, Inc. v. N. Brunswick Planning Bd., 463 A.2d 960, 962 (N.J. Super. Ct. App. Div. 1983). Posner released Wentworth from, and waived, any claim that the annuity payments were not assignable, and agreed to hold it harmless from any claim that the payments were not assignable.

> Seller acknowledges that either or each of the Annuity and the Settlement Agreement and Release may contain provisions that restrict or purport to restrict the assign ability of the Assigned Assets. Seller further acknowledges that Seller has . . . : (i) released Purchaser from (and waived) any claim that the Assigned Assets were not assignable; (ii) indemnified and agreed to hold Purchaser harmless from (and agreed to defend Purchaser in any subsequent lawsuit with respect to) any claim that the Assigned Assets were not assignable; (iii) agreed never to sue Purchaser with respect to the assign ability of the Assigned Assets. . . . Seller covenants and agrees to so order and conduct Seller's affairs as to prevent the assertion of any claim that the Assigned Assets were not assignable.

January 14, 1997, Purchase Agreement, para 5e., at page 6. Thus, the anti-alienation clause is unenforceable if Posner voluntarily relinquished the right to assert the enforceability of the non-assignment clause in a clear, unequivocal, and decisive act.

Posner has presented no argument or evidence, other than the incapacity claim, that she did not voluntarily relinquish her right to assert the enforceability of the non-assignment provision of the Settlement Agreement when she signed the purchase agreements. Therefore, the clear, unequivocal, and decisive act of signing the purchase agreements that contained the waiver provision, constitutes a voluntary waiver of her right to assert the enforceability of the non-assignment provision in the Settlement Agreement, and Posner waived any right she had to assert the enforceability of the anti-assignment clause in the Settlement Agreement. Moreover, it would be inequitable to allow an assignor to assert the enforceability of an anti-alienation

provision against an assignee that contractually protected itself from such a claim when the obligor has not contested the assignment.

### 3. The Writ of Execution Does Not Bar This Court From Determining Who Owns the Annuity Funds

Finally, Posner bases her motion for summary judgment, as well as her defense to Wentworth's motion for summary judgment, on the doctrine of inconsistent election of remedies. Posner contends that Wentworth cannot seek specific performance of the purchase agreements in this Court because it has already received a writ of execution against her real and personal property, and any assets in the possession of Integrity.

The doctrine of election of inconsistent remedies is "a procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both." Riverview Coop., Inc. v. First Nat. Bank and Trust Co. of Mich., 337 N.W.2d 225, 226 (Mich. 1983). "Its purpose is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury." Id., at 226-27. In order for the doctrine to apply, three prerequisites must be met: 1) two or more remedies must exist; 2) the remedies are inconsistent with each other; and, 3) a party has chosen to pursue one over the other. Id., at 227.

In June of 2000, after an investigation into Wentworth's business practices, Wentworth entered into an Assurance of Voluntary Compliance with the Pennsylvania Attorney General. Under the terms of the agreement, Wentworth is only to enforce the Confession of Judgment clause found in its purchase agreement by seeking an order attaching, garnishing, or freezing the annuity payments in possession of the insurance company, and may not seek recourse against any other personal assets or real property belonging to the defaulting individual. Nor may Wentworth obtain the assets held by the insurance until it files a separate civil suit against the

defaulting individual and obtains a favorable judgment.

While two or more inconsistent remedies exist, Wentworth has not pursued them.  While ordinarily a party that has obtained a writ of execution may seize assets to satisfy a confessed judgment, Wentworth is legally forbidden from doing so by virtue of the Assurance of Voluntary Compliance.  The Assurance of Voluntary Compliance limits the effect of obtaining a writ of execution to freezing any assets an insurance company may hold on behalf of a party that defaults on a purchase agreement with Wentworth.  Wentworth has not chosen one avenue of satisfying Posner's default on her agreements over another.  Rather, by seeking the writ Wentworth has merely prevented assets that may be subject to levy or attachment from dissipation or conversion, and has not sought, or received, a remedy for Posner's defaulted obligations.

Next, Wentworth is not seeking inconsistent remedies.  While Posner argues that Wentworth is seeking specific performance of the purchase agreements, Wentworth's counter-complaint only seeks a court order declaring it the rightful owner of the withheld annuity payments, and an order directing the withheld and remaining annuity payments it purchased to be sent to its offices.  This is not the same thing as seeking specific performance of the contract from Posner.  Rather, the order would release Integrity and General from the current, and the possibility of a future suit by Posner for breach of contract.  Moreover, to the extent the order would direct payments not yet due, but purchased by Wentworth, to be paid to Wentworth, the order would not be inconsistent with the writ of execution and confessed judgment in Pennsylvania because the writ and judgment only cover payments that were due in the past, and not payments that become due in the future.  Thus, an order from this Court would prevent future

15

litigation over who is the rightful owner of future payments.

Further, in looking at the purpose behind the doctrine, the requested relief would not result in double redress for the same injury. An order finding that Wentworth is the true owner of the withheld payments, and directing future purchased payments be sent to Wentworth would not create a double recovery for Wentworth, and would not run afoul of the bankruptcy court order preventing Wentworth from using the district court action to enforce the Pennsylvania judgment. Rather, such an order would merely release Integrity and General from the current, and any future, breach of contract suit by Posner.

Moreover, the relief sought by Wentworth necessitate a separate judgment in this Court against Posner for the amount of money owed, and past due, under the purchase agreements. At the same time, it would resolve any possible future disputes over who is the owner of future purchased payments, which are not the subjects of the writ and judgment in Pennsylvania. Further, Wentworth has not received recovery by virtue of the writ of execution because the Assurance of Voluntary Compliance limits the effect the writ has, and merely freezes any assets held by Integrity. Also, by virtue of the compliance agreement, Wentworth may not utilize the writ to collect the proceeds of the purchase agreements.

### C. Plaintiff's Motion to Allow Amended and Supplemental Answers to J.G. Wentworth's Counter-Complaint

A party may amend a pleading once as a matter of right if it is done before a responsive pleading is served. FED. R. CIV. P. 15(a). A party may otherwise amend the pleading only by leave of the court, or by written consent of the adverse party. Id. Leave to amend a complaint shall be freely given when justice so requires. Id. "In deciding whether to grant a motion to

amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Brumbalough v. Camelot Care Centers, Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

Without reaching the question as to whether the bankruptcy stay prevented Plaintiff from either amending her answer or seeking leave to amend, the Court will grant leave to amend because there has not been: undue delay in filing,[4] lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of amendment. Because both Posner and Wentworth have addressed the proposed additional defense of inconsistent election of remedies in their cross-motions for summary judgment, it would be make little sense not to allow leave to amend, and therefore, leave is GRANTED.

## IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendants General American Life Insurance Company and Integrity Life Insurance Company's Motion for Declaratory Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, Third-Party Defendant J.G. Wentworth's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion to Allow Amended and Supplemental Answers to J.G. Wentworth's Counter-Complaint is **GRANTED**.

**IT IS SO ORDERED.**

## DECLARATORY JUDGMENT

---

[4] Consideration of the automatic stay should play a role in the Court's analysis/decision on whether the delay to bring the motion is undue. See Security Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc., 64 F.3d 1001, 1009 (6th Cir. 1995).

**IT IS HEREBY ORDERED** that J.G. Wentworth, S.S.C. Limited Partnership is the legal owner of the proceeds of the annuity contract that are the subject of the January 14, 1997, Purchase Agreement, and the subsequent amendments to that agreement, entered into by Michelle Posner between June 9, 1997, and November 11, 1999, with J.G. Wentworth, S.S.C. Limited Partnership.

**IT IS FURTHER ORDERED** that General American Life Insurance Company and Integrity Life Insurance Company shall remit any annuity proceeds assigned to J.G. Wentworth, S.S.C. Limited Partnership by Michelle Posner that are not subject to the June 20, 2003, Writ of Execution entered by the Commonwealth of Pennsylvania, County of Philadelphia, Court of Common Pleas.

      s/Marianne O. Battani  
      MARIANNE O. BATTANI  
      UNITED STATES DISTRICT JUDGE

DATED: April 24, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to James H. Walkerdene, Randolph D. Phifer, and Ellen Donnelly on this date by ordinary mail and/or electronic filing.

      s/Bernadette Thebolt  
      DEPUTY CLERK